UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS

_____
                                      )
                                      )
**JAMES J. TOMBENO,**                 )     **CIVIL ACTION**
           **Plaintiff,**             )
                                      )     **NO. 16-cv-40008-TSH**
         v.                           )
                                      )
                                      )
**FEDEX CORPORATE SERVICES, INC.,**   )
**And BRENDA NYLEN CHRISTMAS**        )
           **Defendants.**            )
_____


           <u>**ORDER AND MEMORANDUM OF DECISION**</u>
           <u>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>
                          <u>**(Docket No. 40)**</u>

                          **January 9, 2018**

**HILLMAN, D.J.**

                          <u>**Introduction**</u>

    James Tombeno ("Plaintiff") filed a complaint against his supervisor, Brenda Nylon, now known as Christmas ("Christmas"), and FedEx Corporate Services, Inc., ("FedEx") (collectively referred to as "Defendants") in state court after being terminated from employment. Pursuant to 28 U.S.C. § 1441, Defendants removed the action to this Court. The complaint alleges age discrimination in violation of the Age Discrimination in Employment Act and Massachusetts General Laws chapter 151B; Gender discrimination in violation of Title VII of the Civil Rights Act and Massachusetts General Laws chapter 151B; Hostile work environment in violation of the Age Discrimination in Employment Act and Massachusetts General Laws chapter 151B; Retaliation in violation of Title VII of the Civil Rights Act and Massachusetts General Laws

chapter 151; Breach of express or implied contract. For the reasons stated below, the Defendants motion for summary judgment is granted.

## Facts

Plaintiff had been employed by FedEx for more than 22 years prior to being terminated on May 14, 2014. His job title was Business Development Sales Executive and he was 63 years old at the time of his termination. Defendant Christmas, was a District Sales Manager and Plaintiff's supervisor for the four years leading up to his termination.

In 1991, when Plaintiff was first hired by FedEx, he signed an agreement which included a statement permitting the company to request he undergo a medical examination, including drug and alcohol tests. This agreement also indicated, in all capital letters, that Plaintiff's employment could be terminated with or without cause and without notice or liability whatsoever, at any time, at the option of either the employee or employer. Additionally, Plaintiff signed a handbook acknowledgment every year confirming his understanding of his employment as an at will employee.

Plaintiff performed well at his job which was acknowledged by FedEx on a number of occasions. In 2013, Plaintiff received FedEx's President's Club award for his work performance and an MVP award after being recommended by Christmas.

FedEx conducts performance reviews once or twice a year. The standard evaluation forms used are created in Memphis. All employees, depending on their job titles, are subject to certain requirements and expectations by FedEx. One of these expectations is the number of sales calls a sales executive should schedule per day. Prior to his termination, Christmas told Plaintiff to make five to six sales calls a day. When Plaintiff informed Christmas that he would do his best to comply, she threatened to take away the trip Plaintiff had won as a result of

winning an award from FedEx. Christmas also threatened to put Plaintiff on a planner if he did not make the expected number of sales calls a day.

In December of 2013, on his way to a meeting in Boston, the Plaintiff got a flat tire. While fixing the flat tire, Plaintiff dirtied his shirt resulting in him being underdressed at the meeting. During a break or after the meeting, Christmas took Plaintiff to the side, yelled at him and told him that he should wear a suit to work every day. Christmas would not let Plaintiff explain why he was not dressed appropriately. During a different meeting Plaintiff was clicking his pen. Christmas approached Plaintiff, grabbed the pen from his hand and threw it at him.

On March 5, 2014, Plaintiff had back surgery. He filed for workers compensation benefits after the surgery claiming he had been injured while on a sales call in October 2013. He may have had a phone conversation with Christmas after his fall informing her that he had been injured while working. Plaintiff and Christmas exchanged a number of emails between October 28, 2013 and October 31, 2013 discussing Plaintiff's back injury. None of the emails included information on how Plaintiff was injured. A note written by Plaintiff's doctor states that Plaintiff told him that the condition of his back was not due to any particular injury. Plaintiff's workers compensation claim was denied by FedEx's workers compensation carrier. Plaintiff secured counsel, appealed that denial and later settled his claim. At no point did Christmas file a workers compensation claim on Plaintiff's behalf.

After being out of work due to back surgery, Plaintiff returned in early May 2014. Christmas scheduled a joint sales ride with him only a few days after his return. During joint sales rides, Christmas would sometimes ride in the same vehicle as her employee while other times she would drive separately in her own vehicle. On May 8, 2014, Christmas and Plaintiff, each drove separately in their own vehicles during the joint sales ride.

After attending some of the calls that were scheduled for that day, Christmas approached Plaintiff's car and smelled the odor of marijuana when Plaintiff opened his car door. At this time, Christmas told Plaintiff that she was ending the joint sales ride and walked back to her car. She proceeded to call Jim Wallace, a human resources advisor for FedEx, to inform him of the events that had transpired and to determine appropriate next steps. Christmas subsequently informed her assistant, Lisa Murzyn, that she was going to suspend Plaintiff because she smelled marijuana on his car or on his person.

On Saturday, May 10th, Christmas received an email from Wallace indicating that the legal department recommended that she request the Plaintiff to submit to a drug test, and on Monday a drug test was scheduled in Springfield. Christmas called the Plaintiff to inform him of the drug test scheduled that day. While speaking with Plaintiff on the phone, Christmas informed him that she had smelled marijuana in his vehicle during their joint ride-along and that FedEx was ordering a drug test in Springfield that day. Christmas followed up with an email confirming the time and location and stating that Plaintiff would be suspended if he failed to comply with the request. At no time did Christmas offer to transport Plaintiff to the test.

Shortly after this phone call, Plaintiff called Christmas back and informed her that he would not be going to Springfield for the drug test. Christmas sent another email to the Plaintiff stating that if Plaintiff he was refusing the test, he was suspended without pay until next steps were determined, including the possibility of termination. Plaintiff admits that he was aware that refusal to submit to the drug test could result in termination.

On May 14, 2014 Plaintiff, Christmas and another manager, Seth Johnson, met at the Westborough FedEx station. During the meeting, Christmas terminated Plaintiff and provided him a written letter stating that the reason for his termination was his violation of the

4

Alcohol/Drug Free Workplace policy; Plaintiff did not sign the document. A female who did not perform as well as Plaintiff was hired to replace him.

### **Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(a). A genuine issue of material fact exists when the disputed evidence, viewed in the light most favorable to the nonmoving party, would not lead a reasonable jury to resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 247-48 (1986). If the nonmoving party's argument states merely conclusory allegations, improbable inferences, and unsupported speculation, summary judgment for the moving party is appropriate. *Frankel v. United States Postal Serv*., 96 F. Supp. 2d 19, 24 (D. Mass. 2000).

### *Age Discrimination- ADEA and M.G.L. c. 151B*

In Massachusetts, employers are prohibited from discriminating against employees based on their age under the Age Discrimination in Employment Act and Mass. Gen. Laws c. 151B. The analysis of a discrimination claim filed pursuant to the ADEA and Chapter 151B are so similar that they can be analyzed together. *Adamson v. Walgreen Co*., 750 F.3d 73, 78 (1st Cir. 2014). It is the employee's burden to prove that but for his employer's discrimination, he would not have been terminated. *Id*. If the employee fails to establish direct evidence of age discrimination, the *McDonnell Douglas* burden-shifting framework is used to analyze whether or not discrimination has occurred. *Id*. (Citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

The first step in the *McDonnell Douglas* framework requires the employee to establish a prima facia case of age discrimination by showing (1) the employee was 40 years or older at the

time of termination; (2) his work performance met the employer's legitimate expectations; (3) he suffered an adverse employment action and; (4) the employer filled his position showing the continued need for services. *Melendez v. Autogermana Inc*., 622 F.3d 46, 50 (1st Cir. 2010). Once established, the burden shifts to the employer to articulate a legitimate, non-discriminatory purpose for the termination. *Velez v. Thermo King de P.R., Inc*., 585 F.3d 441, 447 (1st Cir. 2009). If the employer is successful, the burden of persuasion falls again to the employee to show, "by a preponderance of the evidence, that the employer's articulated reason for the [termination] is pretextual and that the true reason for [it] is discriminatory." *Gomez-Gonzalez v. Rural Opportunities Inc*., 626 F.3d 654, 662 (1st Cir. 2012).

In the present case, elements one and three are undisputed[1] however, Defendants argue Plaintiff has failed to establish facts to support elements two and four. Defendants incorrectly argue that because the employee hired to take his position, Patricia Harris ("Harris"), was in her fifties[2] (a member of the protected class) Plaintiff fails to establish this element of his prima facia case of age discrimination.[3] Additionally, the Defendants argue that Plaintiff cannot establish that his work performance met FedEx's expectations because he failed to comply with their Alcohol/Drug Free Workplace policy and the agreement subjecting himself to drug tests upon request from his employer. Notwithstanding Defendants arguments, I find it appropriate to

---

[1] Plaintiff was terminated on May 14, 2014 making him 63 years old and within the protected class at the time he suffered the adverse employment action of being terminated.
[2] It appears that Harris was in her fifties at the time she took Plaintiff's position however, the record is not clear as to her exact age.
[3] This fact alone does not negate the inference that the termination was a result of age discrimination. *O'Connor v. Consolidated Coin Caterer Corp*., 116 S.Ct. 1307, 310 (1996); *Knight v. Avon Products, Inc*., 438 Mass. 413, 423-25 (2003). The fact that Harris is "significantly younger" than Plaintiff can infer that Plaintiff has established a rebuttable presumption of discrimination. *Id*. at 425 (A five year age gap was found to be significant however, using a five year age gap standard is not a bright line rule and should not automatically exclude a plaintiff's claim where the disparity in age is less than five years).

6

assume that Plaintiff has established a prima facia case for discrimination because the underlying issues presented in this case are whether or not Plaintiff's termination was a pretext for discriminatory motives. See *Gomez-Gonzalez*, 626 F.3d at 662 (The court found it "expeditious and appropriate" to assume the plaintiff established a prima facia case when the heart of the case was determining whether the stated reason for termination was pretextual).

Furthermore, I find that Defendants have met their burden of articulating a legitimate, non-discriminatory purpose for Plaintiffs termination; failing to submit to a requested drug test in violation of FedEx policy. Therefore, I move to the analysis of whether or not Plaintiff has sustained his burden of showing that the stated violation of FedEx policy is a pretext for Defendants true discriminatory reason for terminating Plaintiff.

It is the plaintiff's burden to show that the pretextual reason for terminating the plaintiff was "to cover up the employer's real motive" of age discrimination. *Adamson v. Walgreens Co.*, 750 F.3d 73, 79 (1st Cir. 2014) (quoting *Acevedo-Parrilla v. Novartis Ex-Lax, Inc*., 696 F.3d 128, 143 (1st Cir. 2012). Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 42 (1st Cir. 2001) (internal quotation marks omitted). Calling into question the employer's reason for termination is not enough. *Bonefont-Igaravidez v. Int'l Shipping Corp*., 659 F.3d 120, 124–25 (1st Cir. 2011). The plaintiff must point to specific facts to support the argument that his termination was "not only a sham, but a sham intended to cover up [it's] real….motive of discrimination." *Id*. at 125 (citing *Azimi v. Jordan's Meats, Inc*., 456 F.3d 228, 246 (1st Cir.2006) (internal quotation mark omitted)). In other words, there must be a nexus between the employer's stated reason for termination and the facts asserted

to support the employee's argument of discriminatory pretext. *Bonefont-Igaravidez*, 659 F.3d at 124.

The facts in the present case are not sufficient to show a pretext for discrimination on the basis of age. The Plaintiff points to the fact that three or five employees[4] hired by Christmas were under the age of 40, [5] Plaintiff's replacement was younger and did not perform as well as him, and the fact that Christmas simultaneously violated the policy under which the Plaintiff was terminated as evidence of discriminatory pretext. However, the Plaintiff fails to articulate a nexus between these facts and Defendants stated reason for his termination; refusal to comply with a requested drug test in violation of FedEx policy.

Plaintiff asserts that Christmas is the only individual who discriminated against him. However, the record demonstrates that it was not Christmas' decision, but FedEx's legal department's decision to request that Plaintiff submit to a drug test. In fact, the record shows that because Christmas was not familiar with the Alcohol/Drug Free Workplace policy she contacted a human resource advisor for guidance on appropriate next steps and waited to receive further instruction from the legal department. Furthermore, it is undisputed that at the time of his refusal to submit to the drug test, Plaintiff was aware that his refusal could subject him to termination.

I find Christmas' level of cautiousness, the Plaintiff's understanding of the potential consequences, and lack of additional facts to support age discrimination to be inconsistent with a pretext for discrimination. Therefore, even with the presumption that Plaintiff established a

---

[4] It is unclear on the record how many employees Christmas hired.
[5] "[I]n a disparate treatment context, 'statistical evidence…, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee.'" *Bloomfield v. Bernardi Automall Trust*, 170 F. Supp. 2d 36, 45 (D. Mass. 2001) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993)).

prima facia claim for age discrimination, I find that he failed to provide sufficient facts to allow a reasonable factfinder to find discriminatory pretext and the Defendants are entitled to summary judgment, as a matter of law.

*Sex Discrimination- Title VII and M.G.L. c. 151B*

Similar to age discrimination, sex discrimination claims under Title VII of the Civil Rights Act and Mass. Gen. Laws ch. 151B can be analyzed together. *Packard v. Commonwealth Exec. Office of Pub. Safety*, Civil Action No. 08-11782 GAO, 2011 U.S Dist. LEXIS 111055 at *33 (D. Mass. Sept. 28, 2011). A prima facia case for sex discrimination requires showing that (1) plaintiff is a member of a protected class; (2) plaintiff has suffered an adverse employment action; (3) discriminatory animus and; (4) a link between the discriminatory animus and adverse termination action against plaintiff. *Beal v. Bd. of Selectmen of Hingham*, 419 Mass. 535, 544 (1995). The *McDonnell Douglas* burden shifting framework discussed above is also used to analyze a sex discrimination claim. *Gunther v. Gap, Inc*., 1 F. Supp. 2d 73, 77 (D. Mass. 1998).

The Plaintiff cannot establish a claim of discrimination on the basis of sex. Plaintiff suggests Christmas' pattern of terminating "similarly situated" older males is evidence of discriminatory animus. He points to the fact that Christmas terminated three men, after being put on planners. However, this argument fails because the two other men who were terminated by Christmas were not similarly situated to the Plaintiff. The first two men were terminated for lack of performance while the Plaintiff was terminated for violating the Alcohol/Drug Free Workplace policy.[6] See *Adamson v. Walgreens Co*., 750 F.3d 73, 79 (1st Cir. 2014) (Where the

---

[6] The Plaintiff argues that Christmas had impractical expectations of his work performance (specifically pointing to the number of sales calls required per day). However, Plaintiff was not terminated as a result of his work performance and there is no evidence to support that this impractical expectation was in relation to discrimination on the basis of sex or age.

9

court found that the two employees who were punished for a first time similar offense were materially different than an employee who subsequently was terminated for a second similar offense). Additionally, one of the men had been placed on a planner for insufficient performance prior to Christmas becoming his supervisor. The mere fact that two other men were terminated by Christmas, is not enough to show a pattern of discrimination based on gender.

Lastly, Plaintiff admits that he was unaware of any similarly situation women who had been treated differently than he was. He testified that he never heard Christmas make any comments that suggested to him that he was being discriminated against because of his gender.[7]

The Plaintiff has failed to present sufficient facts that would permit a reasonable fact finder to conclude that his termination was more probably than not caused by discrimination. Therefore, he has failed to establish a prima facia case for sex discrimination and the Defendants are entitled to summary judgment on these claims, as a matter of law.

*Hostile Work Environment- ADEA and M.G.L c. 151B*

Pursuant to 29 U.S.C. §623(a)(1) and 631(a) under the ADEA and Mass. Gen. Laws ch.151B, §1 and § 4(1B), employers are prohibited from creating hostile work environments. To establish a valid claim of hostile work environment, the evidence must support a claim that the workplace was "permeated with discrimination, intimidation, ridicule, and insults that [are] sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); See also *Weeks v. Lower Pioneer Valley Educ. Collaborative*, D. Mass., No. 14-30097-MGM (Feb. 19, 2016). There is no precise formula to analyze a hostile work environment claim but rather the

---

[7] To the extent that Plaintiff reiterates the same arguments made in the age discrimination discussion in this section, the same reasoning above applies.

inquiry is specific to the particular facts and circumstances of each case. *Perez v. Horizon Lines, Inc.*, 804 F.3d 1, 6 (2015). When analyzing a hostile work environment claim, some factors the court should look at are the severity of the alleged conduct, the frequency it occurs, whether it is physical or humiliating compared to mere insults, and whether or not it reasonably interfered with the plaintiff's work performance. *Id*.

The Plaintiff points to the following incidents to support his hostile work environment claim: (1) Christmas grabbed Plaintiff's pen out of his hand in the middle of a meeting and threw it at him; (2) a co-worker warned Plaintiff that Christmas was on a "warpath"; (3) Christmas failed to provide guidance on FedEx's leave policy and workers compensation; (4) Christmas addressed the fact that Plaintiff was not dressed appropriately at a meeting; (3) Christmas threatened to put Plaintiff on a planner if he did not complete the required number of sales calls per day; (4) Christmas threatened to take away a travel prize he had earned if he failed to comply with the number of sales calls per day requirement; (5) Christmas' comment to Plaintiff upon his return to work that she didn't think Plaintiff was coming back; (6) Christmas scheduled a joint sales ride-along shortly after Plaintiff's return from back surgery; (7) and Christmas accused Plaintiff of illegal drug use.

The Plaintiff fails to meet the severe or pervasive standard required to establish a hostile work environment claim. The First Circuit has stated that "the hostile work environment standard must be kept 'sufficiently demanding.'" *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1st Cir.2001) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 2283–84, 141 L.Ed.2d 662 (1998)). Most of the alleged misconduct by Christmas that Plaintiff points to is consistent with the role of a supervisor; addressing inappropriate work attire, threatening negative consequences for lack of work performance, scheduling a joint sales ride.

The pen incident and the "warpath" incident carry the most weight with regards to this claim. However, the record shows that the warning of Christmas being on a "warpath" given by a co-worker to Plaintiff was one of a number of warnings that the co-worker admitted to giving other employees under Christmas' supervision. Additionally, the pen incident, while inappropriate behavior by Christmas, does not rise to the level of being "permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *Fontanez-Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 56 (1st Cir. 2006) (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116, 122 S.Ct. 2061, 2074, 153 L.Ed.2d 106 (2002)).[8]

The Plaintiff relies on the statement that Christmas created a hostile work environment by "singl[ing] [the Plaintiff] out for disparate treatment whenever circumstances would permit" to support the fact that Christmas' behavior was specifically targeted at Plaintiff. (Docket No. 46, p. 12). However, this conclusory statement is exactly the kind that cannot be relied upon in determining whether a genuine issue or material fact exists. *Frankel v. U.S. Postal Serv*., 96 F. Supp. 2d 19, 24 (D. Mass. 2000). Without factual support permitting a reasonable fact finder to conclude that Christmas' treatment was discriminatory and rose to the pervasive or severe level of harassment or discrimination, the Defendants are entitled to summary judgment. *Weeks vs. Lower Pioneer Valley Educ. Collaborative*, D. Mass., No. 14-30097-MGM (Feb. 19, 2016).

---

[8] "Offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 82 (1998)).

<u>Retaliation- ADEA and M.G.L c.151B</u>

In addition to prohibiting discrimination, the ADEA and Mass. Gen. Laws c.151B also protect individuals who invoke either statutes' protections by making it "unlawful for an employer to discriminate against any of his employees…because such individual…has opposed any practice made unlawful by this section, or…made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or litigation under this chapter." 29 U.S.C. §623(d). Falling in line with the other claims discussed above, in the absence of direct evidence of retaliation, the courts utilize the *McDonnell-Douglas* burden shifting framework. *Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc*., 425 F.3d 67, 84 (1st Cir. 2005). Plaintiff must show that he engaged in protected conduct, suffered an adverse employment action and a causal connection between the adverse employment action and the protected conduct. *Id*. at 84. It is not required that the Plaintiff's asserted protected activity constitute an ADEA violation but only that the plaintiff had a reasonable, good-faith belief that a violation occurred and he acted on it, which the employer knew and therefore retaliated. *Id*.

Protected activity is the opposition of unlawful conduct under the statutes or the filing of a complaint or otherwise participating in a proceeding involving such misconduct. See Mass. Gen. Laws ch. 151B § 4. The Plaintiff has failed to allege facts to support the fact that he engaged in any protected activity and the Defendants are entitled to summary judgment as a matter of law on this claim.[9]

---

[9] In his Opposition memorandum, Plaintiff asserts that he was retaliated against for filing a workers compensation claim. However, in the Amended Complaint, Plaintiff pleads claims of retaliation under the ADEA and Mass. Gen. Laws ch. 151B and not under Mass. Gen. Laws ch. 152, § 75B. Even if Plaintiff timely plead a claim under Chapter 152, the claim would fail because there are no facts to support a link between the Plaintiff's workers' compensation claim and his termination.

## *Breach of Express or Implied Contract*

To sufficiently state a claim for breach of contract, the plaintiff must allege "at a minimum, that there was a valid contract, that the defendant breached its duties under its contractual agreement, and that the breach caused the plaintiff damage." *Smith v. The Pub. Sch. of Northborough-Southborough Massachusetts*, 133 F. Supp. 3d 289, 296 (D. Mass. 2015) (citing *Davis v. Dawson*, 15 F.Supp.2d 64, 128 (D.Mass.1998)).

The Plaintiff asserts that the Defendants breached their contract by failing to comply with the specific steps as listed in the employee handbook stating that transportation should be offered upon request for a drug test. Although an employee handbook can be construed to be a contract, the Plaintiff has failed to articulate why, in the instant case, the handbook should be. Instead Plaintiff reiterates his argument that the failure to comply with the steps set forth in the handbook is evidence of pretext. See *Hobson v. McLean Hosp. Corp.*, 402 Mass. 413, 415, 522 N.E.2d 975 (1988). Having failed to establish the existence of a contract as required to state a claim for breach of contract, I find that Defendants are entitled to summary judgment as a matter of law.

## Conclusion

For the foregoing reasons, the Defendants Motion for Summary Judgment (Docket No. 40) is ***granted***.

**SO ORDERED.**

 

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**